IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 16-cr-00341-CMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DAVID MICHAEL ANSBERRY,

        Defendant.
_____

**DEFENDANT'S SENTENCING STATEMENT
REGARDING APPLICABLE SENTENCING GUIDELINES**
_____

        David Michael Ansberry ("Mr. Ansberry"), by and through the Office of the Federal Defender, and undersigned counsel, Shira Kieval and David E. Johnson, hereby provides the Court and U.S. Probation with a Sentencing Statement regarding the Guidelines that are applicable in this case, as directed during the change of plea hearing.  *See* Doc. No. 35.

## INTRODUCTION

        The government originally thought that this case involved a chemical weapon. That turned out not to be true.  Nonetheless, the government has strained the meaning of words, and ignored application notes and case law, in order to coax an otherwise-reasonable guideline range into a life sentence.  But the offense in this case was dramatically less serious.  Even if it had worked as designed, the device had little potential to cause damage.  And Mr. Ansberry acted deliberately to make sure that no

person was at risk of physical harm. The actual Guideline sentencing range in this case is, at most, 21-27 months, less than 10% of the government's number.

## ARGUMENT

**I.   Under Section 2K1.4, the base offense level in this case is at most 20, or at least 16.**

David Ansberry pleaded guilty to a violation of 18 U.S.C. § 2332a(a)(2). That statute prohibits the use or attempted use of a weapon of mass destruction ("WMD"). However, that term, WMD, is defined to include one of four different means. *See* 18 U.S.C. § 2332a(c)(2). Here, Mr. Ansberry admitted use of a destructive device under subsection (c)(2)(A) of Section 2332a, which is the means that the government charged in his indictment. *See* Doc. No. 8 (indictment); Doc. No. 36 (plea of guilty and statement of facts relevant to sentencing). Therefore, as explained below, the proper guideline to apply in his case is Guideline Section 2K1.4 (not Guideline Section 2M6.1).

Further, under Section 2K1.4, Mr. Ansberry did not knowingly create a substantial risk of death or serious bodily injury to any person, nor did he attempt or intend the "destruction" of any location. And the government cannot prove such conduct. Thus, the base offense level of 24 under subsection (a)(1) of Section 2K1.4 cannot be applied. *See* U.S.S.G. § 2K1.4(a)(1).

Instead, if the government is able to prove that Mr. Ansberry endangered any structure or place of public use, the base offense level of 20 under subsection (a)(2) would apply. *See* U.S.S.G. § 2K1.4(a)(2). However, Mr. Ansberry does not concede that issue. If the government fails to prove endangerment, then subsection (a)(4) of the Guideline directs the Court to add 2 levels to the offense level from Guideline Section 2B1.1. *See* U.S.S.G. § 2K1.4(a)(4). In this case, under Section 2B1.1(b)(15)(B)

2

(possession of a dangerous weapon in connection with the offense), 2 levels are added to level 14, for a total base offense level of 16.

### A. Guideline Section 2K1.4 applies in this case because this Section 2332a prosecution involves a destructive devices; Guideline Section 2M6.1 cannot be applied.

Traditionally, the phrase "weapons of mass destruction" (WMD) is used to describe chemical, biological and nuclear/radiological agents intended to kill or injure a large number of people. *See, e.g.,* 50 U.S.C. § 2302 (regarding defense of the United States against weapons of mass destruction).[1] But 18 U.S.C. § 2332a, which ostensibly criminalizes the use or attempted use of WMDs, also criminalizes the use or attempted use of destructive devices – such as an explosive – whether they were intended for use

---

[1] Although the FBI website quotes the § 2332a definition of WMDs, it also explains that "national policy" is to use WMD to describe

> materials, weapons, or devices that are intended to cause (or are capable of causing) death or serious bodily injury to a significant number of people through release, dissemination, or impact of toxic or poisonous chemicals or precursors, a disease organism, or radiation or radioactivity, including (but not limited to) biological devices, chemical devices, improvised nuclear devices, radiological dispersion devices, and radiological exposure devices.

FBI, "What We Investigate: Weapons of Mass Destruction," at https://www.fbi.gov/investigate/wmd (last visited Aug. 15, 2017).
Similarly, the military defines WMD to mean:

> Chemical, biological, radiological, or nuclear weapons capable of a high order of destruction or causing mass casualties, and excluding the means of transporting or propelling the weapon where such means is a separable and divisible part from the weapon.

Joint Publication 3-40, "Countering Weapons of Mass Destruction" at GL-5 (Rev. Oct. 31, 2014), *available at* http://www.dtic.mil/doctrine/new_pubs/jp3_40.pdf

as a delivery system for traditional WMDs or whether they were never connected to traditional WMD components in any way.

In other words, there is a difference between traditional WMDs and simple destructive devices completely unrelated to traditional WMDs. In recognition of this fact (as well as the fact that a person can apparently be convicted under § 2332a for a simple threat or hoax), the Sentencing Commission divided the statute into three separate guideline groups for the purpose of determining the base offense level applicable in a Section 2332a case. See U.S.S.G., Appendix A. The first guideline, Section 2A6.1, applies in cases of threats and hoaxes. The second guideline, Section 2K1.4, applies to the use of explosives. And the third guideline, Section 2M6.1, applies to nuclear, biological and chemical weapons. Although the title of Section 2M6.1 includes the phrase "Other Weapons of Mass Destruction," the application note to Section 2M6.1 provides a limiting principle. Specifically, the commentary to Section 2M6.1 *limits* the definition of WMDs under that particular guideline to chemical, biological, and radiological/nuclear weapons. See U.S.S.G. § 2M6.1, comment (n. 1) (citing to three of the four possible subsections of 18 U.S.C. § 2332a). It does *not* include 18 U.S.C. § 2332a(c)(2)(A), which is the subsection describing destructive devices. *Id.* Here, Mr. Ansberry's offense involves subsection (c)(2)(A) of Section 2332a. Therefore, Guideline Section 2M6.1 cannot and does not apply in this case. Instead, Guideline Section 2K1.4 applies.

In a separate prosecution, the government conceded that this was so. In *United States v. Aref*, the government noted that "the definition of weapon of mass destruction in Application Note 1 [of Section 2M6.1] excludes the subsection of § 2332a charged in

4

the indictment." Gov't Sentencing Memo., Docket 422, *United States v. Aref*, No. 04-CR-402 (N.D.N.Y.) (referring to the subsection regarding destructive devices); *see also United States v. Aref*, No. 04-CR-402, 2007 WL 804814 (N.D.N.Y. March 14, 2007) (accepting the Government's concession). The same correct concession should apply here.

Despite the correct application of Section 2K1.4 in this case, the government has indicated it will instead argue that Section 2M6.1 applies. *See* Doc. No. 34 at 7. This is not the first case where the Government has asked a court to ignore the clear language of the guidelines and its commentary, and apply the harsher guideline Section 2M6.1 in a destructive device case. The Government made this same argument in *United States v. Wright*, No. 12-CR-238, 2012 WL 5507254 (N.D. Ohio Nov. 14, 2012). The court there rejected the government's argument and correctly applied § 2K1.4.[2] This Court should do the same.

### B. The government cannot prove that Mr. Ansberry created a substantial risk of death or serious bodily injury to another person, knowingly or otherwise.

Section 2K1.4 creates a number of different base offense levels, which depend mostly on the *mens rea* of the defendant and level of risk to property or human life. Base offense level 24 applies, *inter alia*, if the offense "created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, **and that risk was created knowingly.**" U.S.S.G. § 2K1.4(a)(1) (emphasis added). Base

---

[2] In *United States v. Aldawsari*, 740 F.3d 1015 (5th Cir. 2014), the court affirmed a sentence where the district court had applied a guideline cross-referenced in Section 2K1.4 in a 2332a prosecution involving a destructive device. It is not clear from publicly accessible documents what position the government took in that case.

5

offense level 20 applies, *inter alia*, if the offense creates such a risk, but the risk is not knowingly created.  U.S.S.G. § 2K1.4(a)(2).

The government has not alleged in its statement in advance of plea, Doc. No. 34, and it will not be able to prove, the creation of a substantial risk of death or serious bodily injury to another person.[3]  Rather, the evidence in this case is that Mr. Ansberry attempted to detonate an explosive device in an empty parking lot, near a closed police station that was empty and stores that were closed, all of which he could see and confirmed from his motel window.  The device did not work.  It failed to explode at that time.  Nor did it explode later when it was carried, or later still when it was being examined.  It only detonated when law enforcement shot a bullet into a jar containing the explosive, with the deliberate intent to do so, knowing that no person was at risk of being harmed.  Even then, the explosion was minimal.

### C. The government cannot prove that Mr. Ansberry intended to destroy anything.

Base offense level 24 can also apply if the offense involved "the destruction or attempted destruction" of certain specific buildings or "place[s] of public use."  U.S.S.G. § 2K1.4(a)(1).  Base offense level 20 applies, *inter alia*, if the offense "endangered" the places already described in 2K1.4(a)(1), or if it involved destruction or the attempted destruction of any other structure.  U.S.S.G. § 2K1.4(a)(2).  Here, at most, the government may try to prove that the police station was endangered, and thus that the base offense level should be 20.

---

[3] Although the statute criminalizes attempts, the guideline itself *does not* address an unrealized intention to kill or seriously injure.  In any event, Mr. Ansberry had no intent to kill or injure any person.

To destroy something is to go far beyond damaging that thing. Black's Law Dictionary defines destruction as

> 1. The act or process of demolishing, devastating, or overthrowing <the destruction of the rainforests>. 2. The quality, state, or condition of being ruined or annihilated; loss <the death and destruction rampant in the area>. 3. That which causes demolition, devastation, or ruin <a fool's tongue is his destruction>.

Black's Law Dictionary (10th ed. 2014). In *United States v. Holmes*, former-Chief Judge Kozinski explained that the destruction of a place (as the word is used in Section 2K1.4) means that the place "is rendered incapable of being used for one or more of its principal purposes, and can't be restored swiftly and relatively cheaply." 646 F.3d 659, 661 (9th Cir. 2011). "[S]wiftly," he explains, means within "a year." *Id.*[4] In contrast,

---

[4] The specific issue in the case was whether a fire set to public lands, which burned 1,000 acres, had destroyed the land. The case was remanded for further findings, with the expectation that "[i]f the district court on remand finds that the damage to the land doesn't amount to destruction, then it will probably determine that Holmes endangered the land."

The opinion held that the defendant had waived any argument that public lands were places of public use. Concurring in the judgment, Judge Kleinfeld would have held that "place of public use" – as used in the guidelines – must mean a *structure*; it cannot mean undeveloped land. *Id.* at 666 (Kleinfeld, J., concurring). He relies on the language of the guidelines, as follows:

> The guideline for level 20 applies to "a structure other than" that list. The phrase "or a place of public use" is in both the 24 and the 20 guideline. The language of the 20 guideline has three strong implications for the case before us. First, by referring to "structure other than," the language for level 20 assumes that all concrete examples in the higher guideline are "structure[s]." A "place of public use" for level 24 is probably, therefore, used by the Sentencing Commissioners, to mean a structure. Second, the language implies that burning down or blowing up public facilities other than airports, airplanes, buses, trains, and so forth, should be punished a little less severely than burning down or blowing up structures in that specially designated class. Third, use of the identical catch-all phrase "place of public use" in both guidelines suggests that the commissioners intended it as a catch-all for things like the preceding

7

"[e]ndangering means putting the property at risk but resulting in no actual damage, or damage that is less than destruction." *Id.* at 662.

In this case, no actual physical damage was done by the destructive device. The government will not be able to prove that any damage was intended that would have amounted to *destruction*. At most, the government may attempt to prove that a structure (the police station[5]) was endangered.

If the government is unable to prove that a structure was endangered, then the base offense level will be 16. *See* U.S.S.G. § 2K1.4(a)(4) (directs the Court to add 2 levels to the offense level from § 2B1.1); U.S.S.G. § 2B1.1(b)(15) (directing that the offense level be a minimum of 14, regardless of intended damage, where a dangerous weapon was possessed in connection with the offense). *See* U.S.S.G. § 2B1.1(b)(15).

## II. The adjusted offense level is, at most, 17.

Assuming a base offense level of 20, the adjusted offense level (after the reduction of three points for timely acceptance of responsibility) will be 17. No other adjustments apply.

### A. Guideline Section 3A1.2(a) does not apply; there is not a victim in this case, official or otherwise.

The government proposes that a 3 level increase under Guideline Section 3A1.2(a) applies in this case. *See* Doc. No. 34 at 8. That provision applies if "the victim was . . . a government officer or employee . . . and . . . the offense of conviction was

---

concrete terms, not something that trumps even the Pentagon and the White House in how protected it is.

[5] Mr. Ansberry requests that the Court follow the logic set out by Judge Kleinfeld in his concurrence, as discussed in footnote 4 *supra*, and find that a parking lot is not a place of public use because it is not a structure.

motivated by such status." U.S.S.G. § 3A1.2(a).  Again, the government ignores the plain language of guideline commentary.  Application Note 1 to Section 3A1.2 explains that "[t]his guideline applies when specified individuals are victims of the offense. This guideline does not apply when the only victim is an organization, agency, or the government." U.S.S.G. § 3A1.2, comment. (n.1). Here, no specified individuals are victims of the offense.  In fact, no individuals are victims of the offense.

Precedent also prevents application of the official victim provision.  The Tenth Circuit has held that, in deciding whether to apply Section 3A1.2, a sentencing court may consider only "the offense of conviction, not . . . that offense accompanied by relevant conduct."  *United States v. Blackwell*, 323 F.3d 1256 (10th Cir. 2003).[6]  Section 2332a(a)(2) of Title 18 criminalizes the use or attempted of a destructive device (or several other types of weapons) against a person or property within the United States.  Mr. Ansberry specifically pled guilty to attempting to use a destructive device against property in the United States.  And the government can only prove that; it cannot prove that he attempted to harm any person.

**B.  Guideline Section 3A1.4, terrorism enhancement, does not apply.**

The government also suggests that Guideline Section 3A1.4 applies to this case. *See* Doc. No. 34 at 8.  Not so.

To begin, Section 3A1.4 is a radical enhancement.  It adds at least 12 offense levels (and as many as 32); it also instructs a court to ignore the defendant's actual

---

[6] Although the court was considering a previous version of the Guidelines, it was discussing a subsection that is part of the current Guidelines and is the subsection invoked by the government.

criminal history score and instead treat him as on par with the most irredeemable offenders by mandating the use of a criminal history category of VI. *See* U.S.S.G. § 3A1.4. Practically speaking, it creates a minimum guideline of 210-262 months. This raises constitutional issues, which are discussed below. But the enhancement does not apply in this case in any event, because it only applies to felonies that "involved, or [were] intended to promote, a federal crime of terrorism." U.S.S.G. § 3A1.4(a).

The government's theory in this case is that "ANSBERRY's motivation for planting the explosive device at the door of the PD was in retaliation for the murder of [Guy] Goughnor by the former town marshal of the Nederland Police Department." Doc. No. 34 at 7. Even if Mr. Ansberry had admitted that was his motive (and he did not), that would still not bring his offense within the terrorism enhancement of Section 3A1.4. Regardless, a better conclusion to draw from the government's evidence is that Mr. Ansberry acted in order to remind the public about a friend long forgotten by many. That certainly does not bring his offense within the terrorism enhancement.

The Guideline commentary explains that a "federal crime of terrorism" has the same meaning as that given in 18 U.S.C. § 2332b(g)(5). U.S.S.G. § 3A1.4, comment (n. 1). First, the felony at issue must be one listed in 18 U.S.C. § 2332b(g)(5)(b). And second, the offense must have been "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(a). This imposes a specific intent requirement. *United States v. Wright*, 747 F.3d 399 (6th Cir. 2014) (citing cases).

In this case, the government's argument appears to be that the offense was committed in order "to retaliate against government conduct." *Id.* Even under the

10

government's theory, murder by a person who happens to be a police officer is not government conduct.

Further, at best, the government's evidence may merely connect Mr. Ansberry's offense to the murder of Mr. Goughnor. Too many logical steps must be taken from the evidence to reach the conclusion that a symbolic explosion in the middle of the night in front of the police station was intended to *retaliate* for a murder committed by the Town Marshal of Nederland decades earlier. A better conclusion from the evidence is that Mr. Ansberry wanted people to remember Mr. Goughnor. The terrorism enhancement, Section 3A1.4, should not be applied, whether under the government's theory or otherwise.

### C. A judge may not find facts that cause the terrorism enhancement to apply in this case, because it would lead to an otherwise-substantively-unreasonable result.

As Justice Scalia explained in his dissent from denial of cert in *Jones v. United States*, which was joined by Justice Thomas and Justice Ginsberg, the U.S. Supreme Court has

> held that a substantively unreasonable penalty is illegal and must be set aside. *Gall v. United States*, 552 U. S. 38, 51 (2007). It unavoidably follows that any fact necessary to prevent a sentence from being substantively unreasonable—thereby exposing the defendant to the longer sentence—is an element that must be either admitted by the defendant or found by the jury. It *may not* be found by a judge.

574 U.S. ___, 135 S. Ct. 8, 8 (2014). The Tenth Circuit has explained, in an opinion authored by then-Judge Gorsuch, that "[i]t is far from certain whether the Constitution allows" this type of judicial fact-finding. *United States v. Sabillon-Umana*, 772 F.3d

11

1328, 1331 (10th Cir. 2014).[7]  Under the Fifth and Sixth Amendments to the constitution, and given the extreme impact that a judicial finding relating to Mr. Ansberry's thought process would have on his guideline range and the substantive reasonableness of the dramatic type of sentence the government appears to be advocating for, the Court may not be tasked with making findings that would allow the terrorism enhancement to apply. Such facts would need to be found by a jury, beyond a reasonable doubt.

### D. Even if a judge may find facts that cause the terrorism enhancement to apply, she can only do so if they are proven by clear and convincing evidence.

Section 3A1.4 is an enhancement that not only would increase Mr. Ansberry's offense level by 15 levels, but it would artificially inflate Mr. Ansberry's criminal history category from I to VI.  The only remotely comparable enhancement is the career offender guideline. *See* U.S.S.G. § 4B1.1.  But the career offender guideline is triggered by a traditional judicial inquiry into a defendant's criminal history – and it would only ever apply to a person in criminal history category I if that person had a very significant but

---

[7] The Tenth Circuit has since stated that it is compelled to allow judicial fact-finding as it relates to guidelines calculations. *See United States v. Cassius*, 777 F.3d 1093, 1099 n.4 (10th Cir. 2015).  But *Cassius* does not involve the issue here; nor does it cite to other cases that do.  Rather, the defendant in that case was making a universal argument that *all* relevant facts need to be found by a jury.  *Id.*  The response of the circuit was that *Booker* forecloses that argument.

The point of the argument in Mr. Ansberry's case as presented in *Jones* is that application of the terrorism enhancement will lead to what otherwise would have been a substantively unreasonably sentence.  Only because of the judicial fact-finding involved, allowing the application of the enhancement, would the sentence survive a substantive unreasonableness challenge.  This means that the judge would not simply find facts to direct her exercise discretion within a sentencing scheme.  Rather, the judge would be finding a fact that caused a higher sentence to be permissible when it otherwise would not have been.

*Cassius* itself recognizes that the issue is was somewhat different than the issue raised in Justice Scalia's dissent, as it uses "*But cf.*" rather than *"But see"* to present the argument from *Jones*.

very old criminal record. In contrast, the terrorism enhancement is applied based on a judicial examination of the *motive* of an offender. This determination leads to a dramatic increase in applicable guidelines – in Mr. Ansberry's case, that increase would be between 15 to 19 years.[8] Therefore, before this court applies Section 3A1.4, the government should be required to prove relevant facts by clear and convincing evidence.

The U.S. Supreme Court has recognized, and never foreclosed, the possibility that certain relevant conduct would need to be proven by clear and convincing evidence, where such conduct "would dramatically increase the sentence." *Kinder v. United States*, 504 U.S. 946, 948 (1992) (White, J., dissenting from denial of certiorari) (citing circuit precedent therein); *see also McMillan v. Pennsylvania*, 477 U.S. 78, 88 (1986) (upholding preponderance standard in the case, but not resolving question of whether a higher standing applies where a sentencing enhancement is "a tail which wags the dog of the substantive offense"), *overruled on other grounds, Alleyne v. United States*, 133 S.Ct. 2151 (2013).

The Tenth Circuit has done the same. Most recently in the unpublished decision *United States v. Redifer*, the court set out its history of deferring a definitive ruling on this type of claim:

> Although we have left open the possibility that extraordinary circumstances might justify the use of a more demanding standard at sentencing than a preponderance of the evidence, we have never applied such an enhanced standard of proof. *See, e.g., United States v. Olsen*, 519 F.3d 1096, 1105 (10th Cir. 2008) ("[O]ur circuit has never adopted the clear and convincing

---

[8] If Mr. Ansberry were to otherwise have a total offense level of 17, criminal history category I, then application of Section 3A1.4 would increase his offense level from 17 to 32, and his category from I to VI; his guideline range would increase from 24-30 months to 210-262 months.

13

> standard in so-called disproportionate impact cases," but "we have reserved the question of whether, in some extraordinary or dramatic case, due process might require a higher standard of proof"); *United States v. Smith*, 208 F.3d 1187, 1189 (10th Cir. 2000) (assuming "that a heightened burden of proof might be appropriate in cases of extraordinary upward adjustments in sentences," but finding no extraordinary circumstances justifying such a standard under circumstances of case); *United States v. Washington*, 11 F.3d 1510, 1516 (10th Cir. 1993) (recognizing "the strong arguments that relevant conduct causing a dramatic increase in sentence ought to be subject to a higher standard of proof," but applying preponderance standard to drug-quantity issue). *But see United States v. Constantine*, 263 F.3d 1122, 1125 n. 2 (10th Cir. 2001) (stating that binding precedent forecloses any argument for higher standard for burden of proof in this circuit); *United States v. Valdez*, 225 F.3d 1137, 1143 n. 2 (10th Cir. 2000) (same).

631 Fed. Appx. 548, 563 (10th Cir. 2015). In *Olson*, the court held that the evidence compelled application of the higher guideline, regardless which standard was used. *Smith* involved a recidivism enhancement, and the court held that the government definitively proved two prior convictions, regardless which standard was used. In *Washington*, (cited in *Olson*) the court explained that sentencing facts in "the ordinary case" need only be proven by a preponderance, specifically when the question was drug quantities in a drug case. *Washington*, 11 F.3d at 1516. Although the end-results appeared dramatic in *Washington*, the court explained that the issue before the court was but a four offense level increase.

The Ninth Circuit applies the clear and convincing standard in significantly less dramatic cases than this one. *See United States v. Hymas*, 780 F.3d 1285, 1290 (9th Cir. 2015) (relying on a multi-factor inquiry, including "whether an increase in the number of offense levels is less than or equal to four" and "whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence"); *see also United States v. Thurston*, 06-CR-

14

60069, 2007 WL 1500176, * 20 (D. Or. May 21, 2007) (applying this standard to evidence supporting a terrorism enhancement).

### E. The justification for § 3A1.4 does not apply in this case, and so the guideline should not be applied either.

In *United States v. Maskini*, the defendant made a blanket challenge against Section 3A1.4 by arguing that it was not supported by a rational basis. The court disagreed, explaining that

> Congress and the Sentencing Commission had a rational basis for concluding that an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time.

319 F.3d 88 (2d Cir. 2003).

That rationale does not apply in this case, and neither should the guideline enhancement. The offense in this case was significantly less dangerous than those where the enhancement is generally applied (which either involve attempts to hurt people or they involve assistance to larger terrorist organizations that attempt to hurt people). Additionally, because of a disease that he has had since he was born, Mr. Ansberry's own body is attacking itself in such a way that he will be incapacitated without the need for the type of extreme sentence contemplated by Section 3A1.4. Mr. Ansberry is intending to present the Court with evidence relating to his serious, debilitating, and progressing disease: Osteogenesis imperfecta.

## CONCLUSION

Mr. Ansberry anticipates that the government will be able, at most, to prove that a structure was endangered. If so, the correct base offense level under Guideline Section 2K1.4(a)(2) would be 20. No other enhancements would apply. After reduction for

acceptance of responsibility, this would lead to a final offense level of 17. If the government is unable to meet this burden, the correct base offense level under Section 2K1.4(a)(4) would be 16. Again, no other enhancements would apply. After reduction for acceptance of responsibility, the final offense level would be 13. As it relates to his criminal history category, Mr. Ansberry should correctly be placed (and remain) in criminal history category I.

        Respectfully submitted,

        VIRGINIA L. GRADY
        Federal Public Defender


        */s/ David E. Johnson*
        David E. Johnson
        Assistant Federal Public Defender
        633 17th Street, Suite 1000
        Denver, CO  80202
        Telephone:  (303) 294-7002
        FAX:  (303) 294-1192
        David_Johnson@fd.org
        Attorney for Defendant



        Shira Kieval
        Assistant Federal Public Defender
        633 17th Street, Suite 1000
        Denver, CO  80202
        Telephone:  (303) 294-7002
        FAX:  (303) 294-1192
        Shira_Kieval@fd.org
        Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2017, I electronically filed the foregoing **Defendant's Sentencing Statement Regarding Applicable Sentencing Guidelines** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Gregory Holloway, Assistant United States Attorney
Email: gregory.holloway@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Mr. David Michael Ansberry *(via U.S. Mail)*
Reg. No. 46851-424
c/o GEO Aurora Detention Center

*/s/ David E. Johnson*
David E. Johnson
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
David_Johnson@fd.org
Attorney for Defendant

17